**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 12-20744-Civ-SCOIA

ROBERTA L. MARCUS, INC.,

    Plaintiff,

vs.

NEW CINGULAR WIRELESS PCS, LLC, and
BELLSOUTH TELECOMMUNICATIONS, LLC,

    Defendants.

_____/

**ORDER ON DEFENDANTS' SUMMARY JUDGMENT MOTION**

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment. For the reasons explained in this Order, the Motion is granted in part, and denied in part. Judgment is granted against many of the claims because they are barred by the statute of limitations. A few claims survive the statue of limitations because they are continuing in nature, but the Plaintiff has not presented any evidence of actual damages. The Plaintiff is therefore only entitled to nominal damages, assuming it is able to meet its burden of persuasion.

**I. Background**

This case involves a dispute over a piece of telecommunications equipment between the Plaintiff, Roberta L. Marcus, Inc. ("Marcus"), and the Defendants, New Cingular Wireless PCS, LLC and Bellsouth Telecommunications, LLC. In 1996, New Cingular leased space in the Marcus Centre, a building owned by Marcus. The lease granted New Cingular the ability to install a cellular antenna on the roof of the Marcus Centre, and also to use an equipment closet to store electronic equipments related to the operation of the cellular antenna. A critical component to New Cingular's cellular operations at the Marcus Centre was a piece of equipment called a multiplexer (this component is also the key point of contention in the present litigation). The multiplexer provided the necessary connection between a landline service and the cellular equipment in order for calls to be transported to and from the cellular equipment operating antenna. Without that connection, the cellular site at the Marcus Centre would have been useless. The multiplexer was provided to New Cingular by Bellsouth. Bellsouth was the entity that provided service to the landlines for the area around the Marcus Centre.

Marcus and New Cingular got into a legal dispute over New Cingular's decision to not renew the lease. In 2003 the parties reached a settlement at mediation and executed a Settlement Agreement and Termination of Lease. As part of this settlement, New Cingular agreed to transfer the antenna and all of the cellular equipment in the closet to Marcus so Marcus could lease the site

to another cellular carrier. Also in connection with the settlement, Marcus executed a general release as to New Cingular for *all* claims, known or unknown.

After the lease was terminated, Marcus sought other cellular carriers to lease the antenna and equipment to. As part of this plan, Marcus had insisted in the settlement discussions that New Cingular leave all of the equipment fully operational and powered on so that Marcus would be able to demonstrate to a potential lessee that the equipment was in good working order and would be a "turn-key" operation.

Early in 2006, a technician for New Cingular presented himself to Marcus and asked to exchange a piece of equipment in the equipment closet. Marcus denied the technician access to the closet. In the conversation that followed, Marcus told the technician that he was thinking about shutting off the power to the equipment closet. The technician informed Marcus that shutting off the equipment in the closet could cause a disruption to telephone services in the area.

After that meeting, Marcus sent a letter to New Cingular to express his concern that New Cingular was violating the terms of their settlement agreement by continuing to use the cellular components in the equipment closet. Marcus did not receive a response from either New Cingular or Bellsouth. Marcus did not follow up on this concern because, unfortunately, Marcus's principal, Paul Marcus, became very sick with cancer, requiring intensive treatments including multiple procedures and months of chemotherapy.

Marcus continued to seek other cellular carriers to lease the antenna and equipment, but by 2010 Marcus had become weary of the now seven-year search. Marcus powered down the equipment in order to move the components out of the closet. A New Cingular technician appeared at the Marcus Centre asking to look at the equipment room. This technician advised Marcus that the closet housed a fiber optic back-up unit for New Cingular's service in the area. He convinced Marcus that leaving the equipment powered off could cause Marcus's neighbors to lose service. As it turned out, the piece of equipment the technician was referring to was the multiplexer.

There were some back and forth communications between Marcus and the Defendants. Ultimately the Defendants deactivated the multiplexer remotely. Two years later, in January 2012, Marcus brought this lawsuit. The crux of this dispute is Marcus's contention that the Defendants continued to use the multiplexer following the termination of the 1996 lease agreement. The Defendants contend that they did not use the multiplexer at all, but that it merely remained linked to their network, at Marcus's request, ready to resume service if Marcus ever leased the equipment to another cellular carrier.

## II. Legal Standards

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N Crossarm Co.,* 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress* & *Co.,* 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.*; *Morrison* v. *Amway Corp.,* 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott* v. *Harris,* 550 U.S. 372, 380 (2007).

## III. Discussion

### A.     Counts 1, 3, 4, and 10 Are Barred By The Statute Of Limitations and The Defendants Are Not Equitably Estopped From Asserting That Defense.

Marcus was aware that the multiplexer was still connected to the Defendants' network as far back as 2006. (Marcus Aff. ¶¶ 22-25, ECF No. 83-1; Marcus Dep. 81:8-19, 82:1-4, 83:4-8, 84:16-24, 110:19-25, 113:23-114:12, 123:13-124:13, 134:19-24, ECF No. 82-1.) Marcus even complained to New Cingular in 2006 that the telephone company was "obviously" still using the equipment. (Letter from Paul Marcus to Michael Weeks (Mar. 27, 2006), ECF No. 82-1; *accord* Marcus Dep. 83:4-8, Feb. 27, 2013, ECF No. 82-1.) Marcus threatened to shut down and remove the equipment if New Cingular did not pay him for the use of the multiplexer. *(Id.)* New Cingular did not respond to Marcus's letter, and Marcus let the matter go. Marcus's decision to not follow up on his claims and demands *was not due to anything that the Defendants did.* Instead, Marcus let the matter

3

lapse because he became sick from cancer. (Marcus Dep. 91:17-92:14, ECF No. 82-1; Marcus Aff. ¶ 27, ECF No. 83-1.)

1. <u>Summary judgment will be granted on the breach-of-contract claim in favor of New Cingular.</u>

Summary judgment is appropriate on Marcus's breach-of-contract claim (Count 1) for three reasons: (1) the claim was released by Marcus, (2) the claim is barred by the statute of limitations, and (3) the claim has no factual support. Marcus alleged that New Cingular breached the Mediation Settlement Agreement and the Termination of Lease Agreement by continuing to operate the multiplexer after the lease was terminated. (Second Am. Compl. ¶¶ 20, 34, ECF No. 28; Marcus Dep. 108-09.) Marcus also alleges that New Cingular breached the Bill of Sale by failing to convey the multiplexer to Marcus. (Second Am. Compl. ¶¶ 16, 35; Marcus Dep. 108-09).

Taking these allegations in order, the Mediation Settlement Agreement and the Termination of Lease Agreement were signed on July 22, 2003 and August 1, 2003, respectively. The General Release was signed on August 4, 2003. This General Release included "all manner of actions . . . in law or in equity . . . arising out of any matter . . . from the beginning of the world until the date of this General Release." (Gen. Release, ECF No. 82-1.) But Marcus contends that New Cingular breached the Mediation Settlement Agreement and the Termination of Lease Agreement immediately after executing these agreements by continuing to use the multiplexer as a "back up" unit. (*See* Marcus Aff. ¶ 33, ECF No. 83-1 ("[T]he room contained a fiber optic back up unit for [New Cingular's] service in the area.").) Because these agreements were allegedly breached before the General Release was executed, these claims were necessarily included and extinguished by the General Release. The same reasoning applies with equal force to the allegation that the Bill of Sale was breached by failing to convey the multiplexer to Marcus.

These allegations are also barred by the statute of limitations. It is undisputed that Marcus was aware that New Cingular was allegedly continuing to use the multiplexer by March 26, 2006. (Letter from Paul Marcus to Michael Weeks (Mar. 27, 2006), ECF No. 82-1; *accord* Marcus Dep. 83:4-8.) Since the statute of limitations for a breach-of-written-contract claim is five years, Fla. Stat. § 95.11(2)(b) (2012), the statute of limitations for this claim expired on March 26, 2011. But Marcus's lawsuit was not filed until January 2012.[1] (Defs.' Stmt. Facts ¶ 1, ECF No. 78.)

---

[1] Throughout the deposition of Paul Marcus, and occasionally in Marcus's briefs, the Plaintiff drops subtle allegations of additional wrongs that New Cingular allegedly committed. For example, Marcus complains that New Cingular may have removed some electronic equipment from the closet after the lease termination, or that New Cingular was never authorized to coordinate with Bellsouth to have the multiplexer installed when the cell tower was operating. None of these allegations are legitimately before the Court because they are not alleged in the Second Amended Complaint, and Marcus has not filed a motion for leave to amend. But even if these claims were

4

New Cingular is not equitably estopped from asserting the statute-of-limitations defense because there are no facts demonstrating that New Cingular caused Marcus to delay in bringing this action.  The doctrine of equitable estoppel, which is based on principles of justice and fair play, arises "when one party lulls another party into a disadvantageous legal position."  *Major League Baseball v. Morsani,* 790 So. 2d 1071, 1076 (Fla. 2001).  The doctrine prevents a defendant from asserting a statute-of-limitations defense when the defendant, through some nefarious act, has prevented the plaintiff from timely bringing his or her lawsuit.  *Id.*  There are no facts in the record that support Marcus's allegations that the delay in bringing this lawsuit was because of something that New Cingular did or said.  Rather, it is clear that the delay is solely attributable to Paul Marcus becoming sick.  (Marcus Dep. 91:17-92:14; Marcus Aff. ¶ 27 (explaining that because he received no response to the March 2006 letter and because no more technicians from New Cingular visited the Marcus Centre, Marcus "decided not to pursue the matter further, also because of personal matters including a serious cancer diagnosis and intensive treatment.") )

From that time forward, Marcus's only interaction with New Cingular was the occasional visit by a technician to the Marcus Centre.  These technicians purportedly told Marcus that the multiplexer was a back-up unit and that shutting the power off could disrupt telephone service for others in the area.  (Marcus Aff. 33, ECF No. 83-1.)  This allegation explains only why Marcus might not shut off the power to the multiplexer, it does not explain why Marcus would not bring suit for wrongs that he believed New Cingular committed.  New Cingular's actions and statements are not connected to Marcus's failure to bring a lawsuit.  Put simply, New Cingular did nothing at all to lull Marcus into a disadvantageous legal position.  Nothing prevented Marcus from investigating his conclusions that New Cingular had *obviously* been using the equipment since 2003, and nothing prevented Marcus from bringing a lawsuit then.  Accordingly, New Cingular is not prevented from raising the statute of limitations as a defense.  And that defense, which is conclusively supported by the record, is a complete bar to Marcus's breach-of-contract claim.

Finally, Marcus's allegation that New Cingular breached the Bill of Sale by failing to convey the multiplexer to Marcus fails because it is not factually supported by the record.  New Cingular and Bellsouth have both conceded that the multiplexer was conveyed in the Bill of Sale and is owned by Marcus.  (Reply 7, ECF No. 87.)  Given this concession, there is no factual support for Marcus's claim that New Cingular breached the Bill of Sale by not conveying the multiplexer in 2003.  Summary judgment must be granted in favor of New Cingular as to this claim as well.

---

raised they would necessarily fail for the same reason the breach-of-contract claim fails.  These claims were released by Marcus because they arose before the General Release was executed.

2. <u>Summary judgment will be granted on the trespass-to-real-property claim against New Cingular.</u>

The tort of trespass to real property is "an unauthorized entry onto another's property." *Coddington v. Staab,* 716 So. 2d 850, 851 (Fla. 4th DCA 1998) (quotation omitted). In this alternative claim, Marcus's allegations proceed from the premise that the multiplexer was not conveyed in the Bill of Sale and thus still belonged to New Cingular or Bellsouth. Marcus's theory of liability is that if the multiplexer still belonged to the Defendants after the lease agreement was terminated, then the act of leaving the multiplexer on Marcus's property for all these years constituted a trespass upon Marcus's land. (Second Am. CompI. " 45-46, 68, ECF No. 28.)

This claim is not supported by the record since the Defendants have now conceded that the multiplexer was conveyed to Marcus in the Bill of Sale. At this point, the parties all agree that Marcus is the true owner of the multiplexer and has been since August 2003. (Reply 7, ECF No. 87.) Given the undisputed record, summary judgment must be granted in favor of New Cingular on the trespass-to-real-property claim.

3. <u>Summary judgment will be granted on the fraudulent-misrepresentation claim in favor of New Cingular.</u>

Under Florida law, the heart of a fraudulent-misrepresentation claim is a false statement concerning a material fact. *Butler v. Yusem,* 44 So. 3d 102, 105 (Fla. 2010). Here, Marcus has articulated two allegedly false statements made by New Cingular: (1) failing to disclose that it was not conveying the multiplexer in the Bill of Sale because New Cingular did not own it, and (2) failing to disclose that New Cingular would continue to use the multiplexer after executing the Lease Termination Agreement. (Marcus Dep. 130:6-18, ECF No. 82-1.)[2] The first claim has no factual support, and the second is barred by the statute of limitations.

Marcus contends that New Cingular misled Marcus to believe that all of the components in the electronics closet would be conveyed in the Bill of Sale. According to Paul Marcus, New Cingular's promises were false because the multiplexer was not actually conveyed to Marcus. But since both Defendants have conceded that the Bill of Sale did include the multiplexer, this claim for misrepresentation has no factual support in the record. Marcus also contends that New Cingular

---

[2] Again Marcus hints at another claim that is not actually pleaded: that the Rooftop Lease Agreement only permitted New Cingular to use the Marcus Centre to conduct cellular communications and that any use of the Marcus Centre to facilitate land-line communications was inconsistent with that agreement. At his deposition, Paul Marcus complained about New Cingular's failure to tell Marcus about the multiplexer and its function (to convey land line communications). (Marcus Dep. 124:20-127:16, ECF No. 82-1.) As articulated, this claim necessarily arose at the time the multiplexer was first installed in the Marcus Centre, near the beginning of the Rooftop Lease Agreement in June 1996. *(See id)* This claim was therefore released as part of the General Release, executed on August 4, 2003.

6

engaged in actionable misrepresentations through its continued operation of the multiplexer in the Marcus Centre after entering into the Termination of Lease Agreement. (Second Am. Compl. ¶¶ 15-16, 18, 20-22.) But it is undisputed that by March 26, 2006 Marcus was aware that New Cingular was purportedly still using the multiplexer. (Letter from Paul Marcus to Michael Weeks (Mar. 27, 2006), ECF No. 82-1; *accord* Marcus Dep. 83:4-8.) Since the statute of limitations for a fraudulent-misrepresentation claim is four years, Fla. Stat. § 95.11(3)(j) (2012), this claim expired in March 2010. But Marcus's lawsuit was not filed until January 2012. (Defs.' Stmt. Facts ¶ 1, ECF No. 78.) Once again, it is undisputed that New Cingular did nothing to keep Marcus from filing a claim; the delay was solely attributable to Paul Marcus's health issues. (Marcus Dep. 91:17-92:14; Marcus Aff. ¶ 27.) For these reasons, summary judgment must be granted in favor of New Cingular as to the fraudulent-misrepresentation claim.

4.      Summary judgment will be granted on the conspiracy claim in favor of New Cingular.

Marcus alleges that New Cingular "conspired [with Bellsouth] to benefit from the contractual relationship [New Cingular] had with [Marcus] for cellular transmissions, only. With access to the Building via said contractual relationship, the Defendants, in concert, conspired to install equipment necessary for fiber optic transmissions, which neither Defendant contracted or paid for." (Second Am. Compl. ¶ 84.) The crux of the conspiracy was to "bargain for use of a cellular antenna locale but in reality to surreptitiously install and run fiber optics operations out of the Building without disclosing and/or paying for the same." *(Id.* ¶ 87.) The Defendants "conspired to run fiber optics operations out of the building without paying for the same as early as June 19, 1996, but no later than August 3, 2003." *(Id.* ¶ 86.)

This claim is barred for several reasons. First, Marcus is claiming damages for wrongs that occurred during the pendency of the Rooftop Lease Agreement (*i.e.*, claims that occurred "no later than August 3, 2003"). (Second Am. Compl. ¶ 86; *accord* Marcus Dep. 140:13-19, ECF No. 82-1.) This claim was discharged by the General Release, executed on August 4, 2003.

Next, Marcus is claiming damages for the continued operation of the multiplexer after the lease agreement was terminated. (Marcus Dep. 140:20-23.)[3] Marcus was aware of this claim since March 2006 but failed to bring suit until January 2012. (Marcus Dep. 134:19-24; Defs.' Stmt. Facts ¶ 1, ECF No. 78.) Once again, it is undisputed that New Cingular did nothing to keep Marcus from filing a claim; the delay was solely attributable to Paul Marcus's health issues. (Marcus Dep. 91:17-92:14; Marcus Aff. ¶ 27.) For these reasons, the conspiracy claim is barred by the statute of

---

[3] Paul Marcus explains that there are three claims under this Count. (Marcus Dep. 140-141.) But, as articulated, the first and the third claims are for the same alleged wrong *(i. e.,* the use of the Marcus Centre to facilitate land line communications when the Rooftop Lease Agreement only allowed for cellular communications). *(Id.)*

limitations, and New Cingular is not estopped from asserting that defense. Accordingly, summary judgment will be granted in favor of New Cingular on the conspiracy claim.

**B.    There Is A Genuine Issue Of A Material Fact As To Liability For Counts 2, 5, 6, 8, and 9, But Marcus Has Failed To Establish The Existence Of Any Actual Damages For These Counts. Summary Judgment Will Be Entered Limiting Marcus's Damages To Nominal Damages Only.**

1.    <u>The claims addressed in this Section are not barred by the statute of limitations.</u>

This Section addresses three causes of action: (a) trespass to personal property (Counts 2 & 6), (b) unjust enrichment (Counts 5 & 8), and (c) conversion (Count 9).[4]  The claims avoid the application of the statute of limitations because, as presented, they are continuing torts.  Marcus contends that the Defendants are liable for these claims because they *continuously* used the multiplexer in the Marcus Centre from the termination of the original lease until June 2010 when the multiplexer was disconnected from Bellsouth's telephone network.  (*See, e.g.*, Second Am. Compl. ¶¶ 40-42, ECF No. 28.)

"A continuing tort is established by continual tortuous *acts*.  *Black Diamond Props. v. Haines*, 69 So. 3d 1090, 1094 (Fla. 5th DCA 2011) (quotation omitted).  "A trespass may constitute a continuing tort."  *Suarez v. City of Tampa*, 987 So. 2d 681, 685 (Fla. 2d DCA 2008).  A trespass claim will be deemed a continuing tort where the defendant's manner of trespassing is abatable; that is, if the defendant's intrusion can be suspended but later resumed.  *See Baker v. Hickman*, 969 So. 2d 441, 444 (Fla. 5th DCA 2007).  The nature of the trespass in *Baker* was flooding that occurred only during major rain events.  *Id.* at 442.  The flooding was caused by the way that the plaintiff's neighbor's home was constructed.  *Id.*  The court determined this was a continuing tort because the trespass (the overflow condition) was abatable, and in fact had been abated.  *Id.* at 444.

A cause of action for unjust enrichment is an equitable claim that implies a contract as a matter of law even though there is no actual contract between the parties.  *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Cont'rs, Inc.*, 43 So. 3d 877, 880 (Fla. 1st DCA 2010).  In an action to recover for unpaid installment payments, a new claim accrues, and the statute of limitations begins to run, upon each period of non-payment.  *See Isaacs v. Deutsch*, 80 So. 2d 657, 660 (Fla. 1955).

Marcus's claims for trespass to personal property and conversion are continuing torts because both of these claims are abatable, and have in fact been abated.  The Defendants' use of the multiplexer in the Marcus Centre could be prevented by shutting off the power to the equipment closet, and later resumed by restoring the power to the equipment.  Marcus did in fact shut down the multiplexer in April 2010. (Marcus Aff. ¶ 31, ECF No. 83-1.)  Marcus's claims for unjust

---

[4]  All of these claims have a statue of limitations of four years.  Fla. Stat. § 95.11(3)(h) (2012) (trespass to personal property & conversion); Fla. Stat. 95.11(3)(k) (2012) (unjust enrichment).

8

enrichment are continuing torts because these claims may be fairly construed as seeking installment payments from the Defendants.

Any claims that occurred more than four years ago are still barred by the statute of limitations. The continuing tort doctrine does not save stale claims. But since these are continuing torts (*i.e.*, *new* causes of action were continuing to arise) Marcus may reach back four years from the date this lawsuit was first filed and proceed forward on those claims. Since it is undisputed that the multiplexer was deactivated in June 2010, the actionable period of these claims is from January 25, 2008 to June 2010.

2. There is a genuine issue as to liability on these claims so summary judgment is not appropriate on the issue of liability.

Having determined that the Section B claims are not barred by the statute of limitations or some other affirmative defense, the next question is whether there is any disputed fact that the Defendants continuously used the multiplexer as alleged. Paul Marcus explained that representatives from one or both of the Defendants told him that shutting off power to the multiplexer "could" cause a disruption to telephone services in the area. (Marcus Aff. ¶¶ 23, 33, 35.) But it is undisputed that "no service was lost or impacted when [Marcus] temporarily powered down the multiplexer in April 2010." (Schneider Aff. ¶ 25, ECF No. 75.)

Marcus argues that the Defendants' conduct "suggests" that shutting off the multiplexer in April 2010 adversely affected the Defendants' customers in the area. (Pl.'s Stmt Facts ¶ 104, ECF No. 84.) But Argument is not evidence, and allegations and speculation are not enough on summary judgment. Marcus has not presented any evidence that any customers lost services because the multiplexer was shut off. Marcus could have filed affidavits or taken the depositions of some of his neighbors who allegedly lost service. Or Marcus could have sent a request for production to the Defendants to get their service records for that time period, in that area, to show that some customers lost service. Marcus may not simply rest on his allegations in the face of the Defendants' contrary evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). So, the evidence shows that Defendants were *not* using Marcus's multiplexer as a critical component to deliver services to Marcus's neighbors. On this point there is no dispute.[5]

But there is one additional allegation that lingers. Paul Marcus testified that a New Cingular technician informed him that the multiplexer in the Marcus Centre was being used as a "back-up unit" for New Cingular's service in the area. (Marcus Aff. ¶ 33, ECF No. 83-1.) The Defendants have presented evidence that the multiplexer "did not, and could not" provide any

---

[5] Even if Marcus was able to present evidence that service was disrupted when the multiplexer was shut down, this fact would not alter the conclusion, in this Section, that Marcus has presented no evidence of damages and is thus limited to nominal damages only.

9

services to any customers in the area. (Schneider Aff. ¶ 21, ECF No. 75.) Unlike the previous example, the Defendants' evidence on this allegation does not go the extra step, but rather simply and directly contradicts Marcus's evidence. In other words, there is a genuine issue as to the material fact of whether the Defendants were using Marcus's multiplexer in some manner as a back-up for services in the area. In this manner, it is plausible that the Defendants could have received some value, even if it was merely the reassurance that if their primary units in the area went down, they could activate Marcus's unit as a back-up. There is no evidence that they ever did activate the unit, but the simple fact that they allegedly could is enough to support Marcus's allegation that the multiplexer was being used by the Defendants in some beneficial way.

3.   <u>Marcus has presented no evidence of any actual damages, and no evidence of any purported benefit.</u>

The Defendants contend that Marcus has failed to adduce any evidence of damages for its claims. Citing to the deposition of Paul Marcus, the Defendants argue that Marcus "has produced zero evidence to substantiate or establish the existence of any of its alleged damages. In fact, [Paul Marcus] admitted at his deposition that Marcus . . . does not have evidence of any . . . damages." (Defs.' Mot. Summ. J. 20, ECF No. 77 (citing Marcus Dep. 146:8-12, 148:15-24, 151:2-14); *see also* Defs.' Stmt Facts ¶¶ 58-63, ECF No. 78.) Likewise, Marcus has not presented any evidence as to the value of any benefit that the Defendants received by allegedly having the multiplexer available as a back-up unit. If anything, the evidence shows that there could not have been much benefit, if any, because the multiplexer was obsolete by 2010. (Schneider Aff. ¶¶ 24, 27, ECF No. 75.)

In response, Marcus argues that actual damage is not a necessary element for the claims of unjust enrichment, conversion, and trespass. (Pl.'s Resp. 18, ECF No. 83.) Marcus contends that it is entitled to "judgment for nominal damages and costs even without later proving actual damages." (*Id.*)

The Defendants have presented probative evidence demonstrating that Marcus has not suffered *any* actual damages. It is thus Marcus's obligation to "go beyond the pleadings . . . and designate specific facts showing that there is a genuine issue" that it has sustained actual damages. *See Celotex,* 477 U.S. at 323-24. Marcus has failed to do so. (Pl.'s Resp. 18, ECF No. 83.) Additionally, Marcus has not offered any evidence of the value of the purported benefit that the Defendants allegedly received. Marcus's Response Brief essentially admits that there is no evidence of actual damages because Marcus fails to argue the point, and fails to cite to any record evidence to support the point. In doing so, Marcus has forfeited any argument that actual damages exist or that the benefit allegedly received by the Defendants had any value. *See Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010). At this point, by its own admission, only nominal damages are in play.

## IV. Conclusion

For the reasons explained above, the Defendants' Motion for Summary Judgment (ECF No. 76) is **GRANTED in part, and DENIED in part**. Summary judgment is granted in favor of the Defendants as to Counts 1, 3, 4, and 10 because these claims are barred by the statute of limitations, have been released, or have no factual support in the record. Summary judgment is denied as to liability for Counts 2, 5, 6, 8, and 9 – there is still a dispute over whether the Defendants actually used the multiplexer as a back-up unit and that dispute is for the fact-finder to resolve. But, partial summary judgment is granted as to damages for Counts 2, 5, 6, 8, and 9 to the extent that even if Marcus is able to meet its burden of persuasion on these Counts, it may only recover nominal damages because it has failed to present any evidence of actual damages.

**DONE and ORDERED** in chambers, at Miami, Florida, on September 3, 2013.

ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**